**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FILED

MAR 15 2017

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| ELISA R. CRUZ, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| | ) |
|       v. | )   Civil Case No. 16-39 (RJL) |
| | ) |
| JOHN F. KELLY[1], Secretary, U.S. | ) |
| Department of Homeland Security, | ) |
| | ) |
|       Defendant. | ) |

## MEMORANDUM OPINION

(March 14, 2017) [Dkt. #13]

Plaintiff Elisa R. Cruz ("Cruz" or "plaintiff") brings this action against John F. Kelly in his official capacity as Secretary of the United States Department of Homeland Security, which agency is plaintiff's employer ("DHS" or "defendant"). Plaintiff complains that she suffered adverse employment actions at the hands of her supervisors at DHS from March 2012 to March 2013. She was disciplined, purportedly for her "inappropriate conduct," by being detailed to a component of DHS where she did not normally work, then by having that detail extended, and then by being reassigned to a position that did not utilize her unique skills in the field of information security. Plaintiff alleges that the disciplinary action was motivated by the fact that she is an

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the recently confirmed Secretary of the Department of Homeland Security, John F. Kelly, "is automatically substituted as a party" for the outgoing Secretary, Jeh C. Johnson, whom plaintiff named in her Complaint.

African American and Hispanic woman.   She also alleges that when she initiated an

equal employment opportunity ("EEO") complaint about this perceived discrimination,

her supervisors retaliated against her by extending her detail and permanently reassigning

her to a field inconsistent with her skills.   She brings her discrimination and retaliation

claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e

*et seq*.   Compl. ¶¶ 54, 62 [Dkt. #1].   Cruz has satisfied the administrative prerequisite

for bringing this claim in federal court: the Equal Employment Opportunity Commission

("EEOC") issued a decision closing her case after a thorough investigation, holding that

there was no factual basis for her claims of discrimination or retaliation.   Compl. ¶¶ 12-

17; *see also* Ex. A to Def.'s Mot. for Summary Judgment ("MSJ") [Dkt. #13-34].

Currently before the Court is defendant's Motion for Summary Judgment [Dkt. #13],

filed on the basis of factual support from the EEOC record, in which defendant argues

that Cruz's detail and reassignment without demotion was nothing more than a

reasonable resolution to the problems that Cruz was having with her colleagues.   Upon

consideration of the parties' pleadings, defendant's Statement of Undisputed Material

Facts ("Def.'s SOF") [Dkt. #13-1], the supporting citations to the record, and the relevant

law, the Court GRANTS summary judgment in favor of defendant and DENIES

plaintiff's motion to conduct additional discovery.   The record is sufficiently developed

for the Court to determine that the only reasonable conclusion here is that Cruz's

reassignments were in reaction to her problems with her colleagues and not to her race,

sex, or protected EEO activity.

## FACTUAL BACKGROUND

Prior to the events giving rise to this suit, Cruz was employed for five years as the

Chief Information Security Officer in the Operations Division of the Federal Emergency

Management Agency ("FEMA"), Office of the Chief Information Officer.   Def.'s SOF

¶ 1.   In June 2011 and again in January 2012, an employee of another component of

DHS, with whom Cruz worked, reported to Cruz's supervisors that she had acted

unprofessionally and in a condescending manner in meetings where he was present.   *Id.*

at ¶¶ 6, 9-10.   After the second incident, Cruz's second-line supervisor directed her first-

line supervisor, Maria Roat ("Roat"), to look into the allegations.   *Id.* at ¶ 11.   Roat

communicated with the agency's Labor and Employee Relations Specialist, Kristen

Gunsolus ("Gunsolus"), who recommended a fact-finding investigation.   *Id.* at ¶ 12.   If

the allegations were corroborated, Gunsolus speculated, then she would recommend

reassigning Cruz as a solution to the problems the office was having with Cruz as a

manager.   *Id.*; Ex. 4 to Def.'s MSJ, at 12[2] [Dkt. #13-5].   Based on Gunsolus's thorough

investigation, which turned up several reports that Cruz was demeaning to her

subordinates and difficult to work with, Roat issued Cruz a written warning indicating

---

[2] This page number refers to the document stamp page numbers that the electronic case filing system automatically generated when the defendant uploaded this document to the electronic docket.

that she would be transferred to a position that required less supervisory contact with her colleagues.   Def.'s SOF ¶¶ 26, 28.   Cruz immediately complained to FEMA's EEO office, alleging that she was removed from her position because she is an African American and Hispanic woman.   *Id.* at ¶ 29.

While her supervisors figured out a new position for her, Cruz was detailed out of the office to a temporary role at DHS Headquarters, creating a vacancy that her supervisors could fill with a new hire.   *Id.* at ¶¶ 27, 31-35; *see also* Ex. 20 to Def.'s MSJ [Dkt. #13-21]; Ex. A to Pl.'s Opp'n, at 12 [Dkt. #16-1].   Although Cruz's detail was originally planned to last 90 days, it ended up lasting an additional four months, until her old position was filled by a new employee and until Roat could find her a new position in a different office.   Def.'s SOF ¶¶ 27, 31-35; *see also* Ex. A to Pl.'s Opp'n, at 12.   When Cruz was notified that the detail would be extended, she amended her EEO complaint to include a claim that the extension was in retaliation for her prior EEO activity.   *See* Ex. A to Pl.'s Opp'n ¶ 8.   Cruz added this allegation notwithstanding the fact that while she was detailed, she indicated to a supervisor that she was "not in a rush to return" and that, if possible, she "would prefer to stay here at the Headquarters."   Def.'s SOF ¶ 33.   As soon as Roat found Cruz a position in a different branch at FEMA, she transferred Cruz back from Headquarters and placed her in that position.   *Id.* at ¶ 34; *see also* Ex. 11 to Def.'s MSJ [Dkt. #13-12]; Ex. 12 to Def.'s MSJ, at 23 [Dkt. #13-13].   The new position was as the Supervisory Information Technology Program Manager in the Business

4

Management Division of FEMA's Office of the Chief Information Officer.   Ex. G to Pl.'s Opp'n [Dkt. #16-7].   Roat selected this reassignment not only because it fit with the goal of removing Cruz from contact with the employees who had complained of her conduct, but also because the office needed someone with supervisory experience for this new position, and Cruz was the only person available who was familiar with the office and who had supervisory experience.   Def.'s MSJ 17-18; Ex. 16 to Def.'s MSJ, at 2 [Dkt. #13-17].   In the final analysis, Cruz suffered no demotion in grade or pay, but she was no longer using her unique skills in information security.   Ex. G to Pl.'s Opp'n; *see also* Ex. 29 to Def.'s MSJ, at 1 [Dkt. #13-30].

## STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.   FED. R. CIV. P. 56(a). The burden is on the movant to show that there is no dispute of fact or that the evidence is so one-sided that the movant must prevail as a matter of law.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).   To the extent that the non-moving party will bear the burden of proving facts at trial, however, those facts must be supported by competent evidence, and the absence of such evidence can form the basis for summary judgment.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).   In evaluating the record, the court must accept as true the evidence of, and draw "all justifiable inferences" in favor of, the party opposing summary judgment.   *Anderson*, 477 U.S. at 255.   After

doing so, a genuine issue exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

Pursuant to Local Rule of Civil Procedure 7(h), the party moving for summary judgment shall file a statement of undisputed material facts, supported with citations to the record, on which the Court can rely to determine whether the moving party is entitled to judgment as a matter of law.   Where, as here, the non-moving party does not counter-file a statement of facts in dispute or otherwise challenge the moving party's assertions, the Court may consider those assertions admitted and may rely on them as undisputed facts if they are supported by the record citations.  *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996) (discussing the predecessor local rule).

## ANALYSIS

I.    **Plaintiff's Discrimination Claim Fails Because No Reasonable Factfinder Could Conclude that Defendant's Legitimate Explanation for Detailing and Reassigning Plaintiff Was Pretextual.**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e−2(a)(1).   Our Circuit has instructed that, at the summary judgment stage, it is an unnecessary and improper "sideshow" to decide whether a plaintiff in a discrimination suit has made out a *prima facie* case where, as here, the employer asserts a

6

legitimate, non-retaliatory reason for the challenged actions.   *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 493-94 (D.C. Cir. 2008). The only relevant inquiry is whether the employee has put forth sufficient evidence for a reasonable jury to conclude that the employer's proffered explanation is a mere pretext and the employer's real motivation was discrimination.   *Id.*   Summary judgment must be granted for the employer if the employee fails to produce sufficient evidence that would discredit the employer's proffered explanation and show that the actions were discriminatory.   *Id.*

Here, plaintiff's discrimination claim fails because no reasonable factfinder could find that Cruz's supervisors removed her from her position for any reason other than to reduce her contact with the employees who complained about her conduct.   By failing to respond to defendant's statement of undisputed material facts, plaintiff admits that her supervisors had overwhelming evidence that her subordinates found her to be demeaning and difficult to work with.   Def.'s SOF ¶¶5-24.   Plaintiff's argument, then, essentially boils down to contending that her punishment for such conduct was overzealous, and she would have been given more lenient treatment if she were a white male.   But this argument is flatly contradicted by the evidence: Gunsolus, who was an independent labor and employee relations specialist and had never met Cruz[3], recommended that

---

[3] There is no question Gunsolus did not know Cruz's race, color, or national origin.   To be sure, Gunsolus may have been able to guess at Cruz's gender given her name and the pronoun Roat used while communicating about her; but there is no good reason to speculate that an independent specialist in these matters, who was herself a woman, could not give good faith, non-discriminatory advice before even

reassignment would be an appropriate solution if the original complaint about Cruz turned out to be corroborated.   Def.'s SOF ¶ 12.   Given that the complaint was indeed corroborated, the only reasonable conclusion is that Cruz's reassignment was a legitimate, non-discriminatory response to her misconduct.   Moreover, plaintiff's theory of overzealousness is implausible on its face because there is hardly a less restrictive way of removing plaintiff from contact with her subordinates than by detailing her and reassigning her when a position with the same grade level and pay becomes available.

Plaintiff next argues that summary judgment is inappropriate at this stage because she needs to conduct more discovery in order to marshal evidence both that other employees at DHS were treated more leniently than she was and that other employees witnessed Cruz being subjected to other "hostile and discriminatory treatment" while employed in the Office of the Chief Information Officer.   *See* Pl.'s Rule 56(d) Aff. ¶¶ 4-5, 8-10 [Dkt. #16-8].   The Court should grant such a request for additional discovery only if the evidence sought is "necessary to resolve the summary judgment motion." *Moore v. United States*. 213 F.3d 705, 710 n.3 (D.C. Cir. 2000); *see also Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (evidence sought must be "necessary to the litigation").   That test is not met here.   The general observation that other employees were treated more favorably or that Cruz faced other hostile treatment could not reasonably tip the scales against the much more specific evidence that, in this

---

meeting Cruz.

8

instance, an independent specialist with no knowledge of Cruz's protected characteristics thought that reassignment would be appropriate in the circumstances that Cruz's subordinates had alleged.   This strong evidence that the employment action was reasonable and independent of Cruz's protected characteristics makes it extremely unlikely that any additional evidence could raise a material dispute over whether the action was pretextual.   Moreover, the fact that Cruz's supervisor, Roat, sought out the recommendation of an independent specialist demonstrates that the only reasonable conclusion here is that Roat acted on a good faith basis in removing and reassigning Cruz.   The record is therefore sufficiently developed to determine that defendant is entitled to summary judgment on plaintiff's discrimination claim.

## II.   Plaintiff's Retaliation Claim Fails Because She Does Not Make Out a Causal Link Between Her Protected Activity and the Extension of Her Detail or Her Reassignment.

Title VII prohibits an employer from retaliating against an employee because that employee "has opposed any practice made an unlawful practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."   42 U.S.C. § 2000e–3(a).   To prove a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in protected activity, (2) she was subjected to an adverse employment action, and (3) there is a causal link between the protected activity and the adverse action.   *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012).   Defendant concedes that Cruz engaged

in protected activity when, on June 6, 2012, she initiated an EEO complaint that her written warning, detail, and reassignment constituted discrimination.   Defendant also seems to concede, at least for the purpose of its summary judgment motion, that Cruz suffered an adverse employment action when her detail to Headquarters was extended on June 20, 2012 (and again in August 2012) and then when she was reassigned to a resource management position in October 2012.[4]   Defendant challenges only the causal connection, contending that Cruz's protected activity did not cause her extended detail and reassignment because those actions had already been put into motion with the decision to remove Cruz from her position in the first place.   Indeed, defendant has produced convincing evidence that Roat intended in the first instance to reassign Cruz until she found a new position for her that would not require her to supervise the employees who had complained about her behavior and that would allow Cruz to "focus more on [her] job."   Ex. 29 to Def.'s MSJ, at 3 [Dkt. #13-30].   That position—with the resource management branch—was not identified until October 2012.   Def.'s SOF ¶¶ 34-35; *see also* Ex. 11 to Def.'s MSJ [Dkt. #13-12]; Ex. 12 to Def.'s MSJ, at 23 [Dkt. #13-13].

Plaintiff's principal evidence of the causal link is the proximity of the protected activity and the adverse action: her EEO complaint came shortly before the extension of

---

[4] The Court is unsure what to make of this sentence, never revisited, in the introduction to defendant's opening memorandum: "Plaintiff cannot produce sufficient evidence to show that she suffered any adverse employment action."   Def.'s MSJ 4 [Dkt. #13].   Defendant seems to waive this argument by declining to offer any support for, or even discussion of, this assertion in the body of the memorandum.

the detail, which was followed a few months later by the undesirable reassignment. Although plaintiff correctly points out that a close connection in timing can sometimes be enough for a jury to infer that EEO activity caused adverse employment action, the point is inapposite to this case because it only holds when protected activity ostensibly alters the course of events that occur shortly thereafter. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (temporal proximity was "immaterial in light of the fact that petitioner concededly was contemplating the transfer before it learned of" the protected activity).   Here, the finding of inappropriate behavior set Cruz on a course that her EEO activity did not change.   Plaintiff has adduced no evidence that her supervisors were ever considering returning her from the Headquarters detail before finding her an altogether different position, or that they had another, more desirable alternative position in mind before learning of her EEO activity.   What is more, plaintiff's own pleading seemingly admits that it was the investigation into her conduct as a manager, and not her EEO activity, that was the sole "basis" for her supervisors "removing" and "reassign[ing]" her.  Pl.'s Opp'n 4 [Dkt. #16].   Therefore, the timing of plaintiff's EEO activity alone does not fulfill plaintiff's obligation to put forward evidence of a causal link with the employment action she complains of.

Plaintiff also argues that the mismatch between her skills and the resource management position create a causal link between her EEO activity and the reassignment because there could be no other reason to put her in a position that does not make the

most of her skills.   But once again plaintiff ignores that the EEO activity did not change the course that was already in motion.   The reason to reassign her was to get her out of the position where her subordinates complained about her behavior, and plaintiff does not point to anything that would cast doubt on whether that motive alone was enough to assign her to a less-than-perfect position.   For instance, plaintiff points to no evidence (or the suggestion that there might be evidence) that there was another GS-15 supervisory position available to which she would have been better matched.

Nor is plaintiff due additional discovery to gather more evidence on the issue of causation.   Her Rule 56(d) affidavit [Dkt. #16-8], setting out her proposed plan for discovery, seeks information about other similar incidents at the agency that were either handled by her supervisors or resulted in the type of discipline she experienced.   Pl.'s Rule 56(d) Aff. ¶¶ 4-5 [Dkt. #16-8].   The purpose of such discovery would be to adduce evidence of "disparate treatment" and "comparators."   *Id.* at ¶ 10.   But this evidence would do nothing to raise doubts about whether Cruz was already slated for a detail that would last until a GS-15 supervisory position for which she was qualified became available.   Without some such evidence, plaintiff cannot make out a *prima facie* claim of retaliation, and the pursuit of disparate treatment and comparators evidence would be, in the end, futile.

12

## CONCLUSION

For the foregoing reasons, the defendant's Motion for Summary Judgment is GRANTED.   An Order consistent with this decision shall accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge